UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

DANIEL WALLACE,                          )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )        1:05-cv-0618-JDT-TAB
                                         )
FREE SOFTWARE FOUNDATION, INC.,          )
                                         )
            Defendant.                   )


**ENTRY GRANTING MOTION TO DISMISS THE COMPLAINT (Docket No. 16)**[1]


Plaintiff Daniel Wallace brings this action pro se under Section 26 of the

Sherman Act (the "Act"), 15 U.S.C. §§ 1 *et seq.*  Mr. Wallace seeks injunctive relief

under that section to remedy "the restraint of trade by way of a licensing scheme to fix

the prices of computer software products" allegedly perpetuated by Defendant Free

Software Foundation, Inc. ("FSF").  (Compl. 1.)  He contends that FSF unlawfully

conspired with its distributors to fix the price of intellectual property in computer

programs through the use of a software license.  (*Id.* 2-3.)  On June 22, 2005, FSF

moved to dismiss Mr. Wallace's case, arguing that he failed to state a claim upon which

relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  Mr. Wallace

responded to the motion on June 23, 2005, with a reply brief being filed on July 15,

2005.  Mr. Wallace subsequently filed a Third Amended Complaint on September 12,

2005. As it indicated in its September 12, 2005 Entry Concerning Selected Matters, and

---

[1]  This Entry is a matter of public record and will be made available on the court's web
site.  However, the discussion contained herein is not sufficiently novel to justify commercial
publication.

having not received any opposition to that Entry, the court deems the Third Amended Complaint the operative complaint with regard to the motion to dismiss, and now rules as follows.

## I.    PLAINTIFF'S THIRD AMENDED COMPLAINT

Mr. Wallace's Third Amended Complaint is long on accusation yet short on detail. In it, he contends that FSF is conspiring with commercial distributors International Business Machines Corporation, Red Hat Inc., Novell Inc. and others to fix the price of intellectual property in computer programs that are collectively known as the Linux (or GNU/Linux) operating system.  (Compl. 2.)  Mr. Wallace contends that the price fixing is carried out through a GNU General Public License ("GPL") used by FSF, and that the GPL constitutes a "per se horizontal price-fixing scheme" that "forecloses competition in the market for computer operating systems."  (Compl. 3.)  As for injury, Mr. Wallace contends that the price fixing scheme "threatens to prevent him from entering into the [computer software] market with his own operating system."  (*Id.*)  As a result, he seeks an injunction prohibiting FSF from developing and distributing the Linux operating system under the GPL.  (*Id.*)

## II.    MOTION TO DISMISS THE COMPLAINT

In its Motion to Dismiss the Complaint, FSF requests that the court dismiss Mr. Wallace's Complaint with prejudice for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  FSF contends that Mr. Wallace has not pointed to any agreement that violates antitrust laws, or that has a negative

effect on competition.  Moreover, it argues that Mr. Wallace has failed to allege any antitrust injury to consumers or himself, and therefore lacks standing to bring the complaint.

FSF states that in forming its argument, it "resorted to Plaintiff's Motion for Summary Judgment to better understand Plaintiff's legal theory . . . ." (Mot. 1.)  FSF's reliance on Mr. Wallace's motion for summary judgment in filing its motion to dismiss was incorrect.  A motion to dismiss under Rule 12(b)(6) challenges only the sufficiency of a complaint for failure to state a claim upon which relief can be granted, *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997), and the inquiry at that stage is generally limited to only the "pleadings."  *See* Fed. R. Civ. P. 12(b).  Under Rule 12(b), the court must exclude from its consideration any materials outside those pleadings.  *See, e.g., Venture Assoc.'s Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1992); *Ill. Farmers Ins. Co. v. GSW, Inc.*, 2005 U.S. Dist. LEXIS 9562, *3 (N.D. Ill. Jan. 25, 2005); *Eglen v. Am. Online, Inc.*, 2001 U.S. Dist. LEXIS 26002, *14 (S.D. Ind. June 19, 2001).  As a result, in evaluating the instant motion this court declines to consider the extraneous materials FSF relied upon in drafting the motion, and looks only to the Third Amended Complaint.

## A.    Standard of Review

When ruling on a motion to dismiss under Rule 12(b)(6), the court must accept as true the factual allegations contained in the complaint, as well as the inferences reasonably drawn therefrom.  *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir.

2000); *Baxter by Baxter v. Vigo County Sch. Corp.,* 26 F.3d 728, 730 (7th Cir. 1994).  A dismissal is appropriate only if the plaintiff can establish no set of facts, even if hypothesized, consistent with the allegations of the complaint that would entitle him or her to relief.  *See Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir. 1994).  Moreover, the court must examine only the complaint, and not the merits of the lawsuit.  *See Autry v. Nw. Premium Servs., Inc.,* 144 F.3d 1037, 1039 (7th Cir. 1998).

> **B.      Plaintiff's Third Amended Complaint States a Claim Upon Which Relief can be Granted.**

Keeping this standard in mind, the court must determine whether Mr. Wallace's Third Amended Complaint adequately sets forth a claim for relief under Fed. R. Civ. P. 12(b)(6).  While Mr. Wallace never specifically so indicates, it appears from the Complaint that he attempts to allege a claim for price fixing under Section 1 of the Sherman Act.  He apparently contends that the GPL constitutes a horizontal price fixing agreement under that section, and therefore is per se unlawful.  *See* 15 U.S.C. § 1.

4

1.    **Plaintiff's Allegations Indicate that the General Public License is a Vertical Agreement, Which Cannot Form the Basis of a Per Se Violation of Section 1 of the Sherman Act.**

The standards consistently applied to determine whether conduct violates Section 1 of the Sherman Act are the per se rule and the rule of reason.  *Nat'l Soc'y of Prof'l Eng'rs*, 435 U.S. 692, 692 (1978).  As for the per se rule, it is applied to "certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use."  *N. Pac. Ry. v. United States*, 356 U.S. 1, 5 (1958).  Among those agreements or practices are horizontal price fixing agreements—that is, those made by competitors or potential competitors.  Horizontal agreements are more likely to fix prices or restrain production to the detriment of buyers because they affect multiple distribution points or products.  On the other hand, if an agreement or practice does not always have a "pernicious effect" on competition, courts apply the rule of reason.  Originating in *Standard Oil Co. of New Jersey v. United States*, 221 U.S. 1, 63 (1911), the rule of reason allows a defendant to interpose defenses that relate to the merits of the business conduct.  Vertical agreements—that is, those created between enterprises at different levels within the same chain of distribution (e.g., manufacturer—distributor—dealer)—are analyzed under the rule of reason analysis.

5

Based on the allegations set forth in the Third Amended Complaint and the content of the GPL[2], this court concludes that the GPL is a vertical agreement.  Mr. Wallace's overarching attempts to characterize it as anything but must be rejected, given the content of the agreement itself.  In the provision relevant here, the GPL directs users to "cause any work that [they] distribute or publish, that in whole or in part contains or is derived from the Program or any part thereof, to be licensed as a whole at no charge to all third parties under the terms of this License."  (GPL 3.)  This language indicates that the GPL is typically entered into between licensees and licensors, with the intent of prohibiting licensees from charging a fee for use of certain computer software programs.  This scheme, which involves an agreement among different levels of users within the same chain of distribution, is a vertical agreement.  And as a vertical agreement, the GPL alone cannot form the basis of a per se violation of Section 1 of the Sherman Act.  *See State Oil Co. v. Khan*, 522 U.S. 3, 22 (1997) ("vertical maximum price fixing, like the majority of commercial arrangements subject to antitrust laws, should be evaluated under the rule of reason.").  Therefore, the court must turn to whether Mr. Wallace has adequately alleged that the GPL violates the rule of reason.

---

[2]  The court may refer to the GPL in deciding the motion to dismiss because Mr. Wallace referred to it in his Third Amended Complaint.  *See Venture Assoc's. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

**2.      Plaintiff's Allegations Sufficiently Set Forth a Violation of the Rule of Reason.**

To establish a Section 1 claim under the rule of reason test, a plaintiff must prove that "(1) that the defendants contracted, combined, or conspired among each other; (2) that the combination or conspiracy produced adverse, anti-competitive effects within relevant product and geographic markets; (3) that the objects of and the conduct pursuant to that contract or conspiracy were illegal; and (4) that the plaintiffs were injured as a proximate result of that conspiracy." *Tunis Bros. Co. v. Ford Motor Co.,* 952 F.2d 715, 722 (3d Cir. 1991).

In this case, it appears that Mr. Wallace has made the necessary allegations of FSF's unlawful contract and conduct.  In his Third Amended Complaint, he specifically alleges that FSF conspired with others, including International Business Machines Corporation, Red Hat Inc. and Novell Inc., to control the price of available software within a defined market through the GPL.  Primarily at issue in FSF's motion is whether Mr. Wallace has adequately alleged that the GPL had a resulting anticompetitive effect. Anticompetitive effect has been described as a reduction of output, increase in price, or deterioration in quality of goods and services.  *Generac Corp. v. Caterpillar Inc.,* 172 F.3d 971, 978 (7th Cir. 1999)*; Wilk v. Am. Med. Ass'n,* 895 F.2d 352, 360-62 (7th Cir. 1990) (impeding consumers' free choice is an anticompetitive effect); *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 508-09 (9th Cir. 1989) (in a market

that "is both narrow and discrete and the market participants are few," the loss of a competitor may result in an anticompetitive effect if there is an effect on price or availability, the allocation of resources, or the opportunities for market entry).

The GPL allows free access to software programs, subject to some limitations. This does not mean that the GPL necessarily aids competition as contemplated by the Sherman Act, as FSF contends.  Instead, it could be argued that by making software available to consumers free of charge through a licensing agreement, the GPL results in "reduction in output . . . [and] deterioration in quality," *United States v. Brown Univ.,* 5 F.3d 658, 668 (3d Cir. 1993), which could be harmful to consumers.  By making certain software programs available to users at no charge, the GPL may be discouraging developers from creating new and better programs because they will not receive compensation for their work, thereby reducing the number of quality programs available to users.  This may be considered anticompetitive effect, and it certainly can be inferred from what Mr. Wallace alleges in his Third Amended Complaint.  Therefore, this court finds that the Third Amended Complaint states a claim for violation of Section 1 of the Sherman Act, under the rule of reason doctrine.

### C.      Plaintiff Has Not Alleged Antitrust Injury.

FSF lastly argues that even if the Third Amended Complaint sets forth a claim upon which relief can be granted, it still must be dismissed.  It contends that a claim for

violation of Section 1 of the Sherman Act cannot proceed without a showing of antitrust injury, and Mr. Wallace has failed to make such a showing here.  FSF also contends that Mr. Wallace does not have standing to bring his claim before this court.  It specifically states that Mr. Wallace's "lack of standing and lack of antitrust injury is a separate, and independently sufficient, basis on which to dismiss the Complaint." (Resp. 5.)

The Supreme Court set forth the antitrust injury requirement for the first time in the seminal case of *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,  429 U.S. 477 (1977). In that case, the Court defined antitrust injury as "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' act unlawful."  *Id.* at 486.  In *Brunswick*, a bowling equipment manufacturer acquired several failing bowling centers that competed with the plaintiffs' bowling centers.  *Id.* at 489.  The plaintiffs challenged the acquisition under Section 1 of the Clayton Act, and sued for damages under Section 4.  They argued that if the defendants had not acquired the failing centers, the centers would have failed and the plaintiffs' profits would have increased as a result.  *Id.* at 480-81.  The Supreme Court analyzed this argument and rejected it, holding that where the sole injury alleged by the plaintiffs was denial of increased market share, the plaintiffs had not stated or suffered an antitrust injury.  *Id.* at 488-89.  The Court reasoned that in order for an injury to be considered

adequate for antitrust purposes, the injury should reflect the anticompetitive effect of either the violation or the anticompetitive acts made possible by the violation. *Id.* at 489.

The Seventh Circuit Court of Appeals has summarized the *Brunswick* antitrust injury requirement as:

> injury by reason of those things that make the practice unlawful, such as reduced output and higher prices. The antitrust-injury doctrine was created to filter out complaints by competitors and others who may be hurt by productive efficiencies, higher output, and lower prices, all of which the antitrust laws are designed to encourage. *See, e.g., Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 109 L. Ed. 2d 333, 110 S. Ct. 1884 (1990); *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 93 L. Ed. 2d 427, 107 S. Ct. 484 (1986); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 50 L. Ed. 2d 701, 97 S. Ct. 690 (1977).  A plaintiff who wants something, such as less competition or higher prices, that would injure consumers, does not suffer antitrust injury.

*United States Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 626-27 (7th Cir. 2003). Though an antitrust claim must demonstrate "antitrust injury," antitrust plaintiffs need not plead to a heightened level of particularity.  *S. Austin Coal. Cmty. Council v. SBC Commc'ns Inc.*, 274 F.3d 1168, 1171 (7th Cir. 2001).

In his Third Amended Complaint, Mr. Wallace describes his injury as "threaten[ing] to prevent [him] from entering into the market with his own computer operating system."  (Comp. 3.)  He does not allege that he was injured as a

consumer—a purchaser or user—of software governed by the GPL.  Nor does he allege injury to the software market as a whole as a result of the GPL.  Instead, Mr. Wallace's alleged injury relates only to his personal inability or unwillingness to enter into the software market because his efforts might not be rewarded financially.  This injury constitutes harm to Mr. Wallace as a competitor, not harm to consumers specifically, or harm to competition in general.  This is exactly the type of injury *Brunswick* forecloses. *See Atlantic Richfield Co.*, 495 U.S. at 338 ("It is not enough for antitrust plaintiffs to show that the defendants' anticompetitive behavior injured them; they must also show that their injury stemmed from an injury to competition itself, as "the antitrust laws were enacted for 'the protection of competition, not competitors.'").  As a result, this court finds that Mr. Wallace's Third Amended Complaint does not adequately plead an antitrust injury upon which his Section 1 claim may move forward.[3]  The complaint must therefore be dismissed.

## III.    CONCLUSION

For the reasons stated above, the court finds that Mr. Wallace has stated a claim under Section 1 of the Sherman Act, but has failed to allege an antitrust injury such that the claim may move forward.  The court therefore **GRANTS** the Motion to Dismiss the

---

[3] FSF also argues that Mr. Wallace is without Article III standing to bring his claim.  In view of the court's ruling on the antitrust injury issue, it is unnecessary to address whether Mr. Wallace had standing.

Complaint (Docket No. 16), filed June 22, 2005.  This dismissal will be without

prejudice.  Mr. Wallace may file a proposed Fourth Amended Complaint curing the

deficiencies of the Third Amended Complaint within twenty days of this Entry.  If he

does not do so, the dismissal will be with prejudice.

ALL OF WHICH IS ENTERED this 28th day of November 2005.

_____

John Daniel Tinder, Judge
United States District Court

Electronic copies to:

Curtis W. McCauley
Ice Miller
mccauley@icemiller.com

Philip A. Whistler
Ice Miller
philip.whistler@icemiller.com


Copy mailed to:

Daniel Wallace
P.O. Box 572
New Palestine, Indiana 46163